UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Number: |
| | : | |
| v. | : | 24-383(RC) |
| | : | |
| BRADY TURNER, | : | |
| | : | |
| Defendant. | : | |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

Defendant Brady Turner agrees to admit guilt and enter a plea of guilty to Count One of the Information, which charges Turner with Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349. Pursuant to Federal Rule of Criminal Procedure 11, the Government and Turner, with concurrence of his attorney, agree and stipulate that the Government would prove the following facts at trial beyond a reasonable doubt:

### Background

*Relevant Individuals and Entities*

1. Defendant Brady Turner was a resident of Maryland and was employed as a Train Operator by the Washington Metropolitan Area Transit Authority ("WMATA") that operated in the District of Columbia and elsewhere.

2. Co-conspirator 1 was a resident of Maryland and was employed as a Train Operator by WMATA that operated in the District of Columbia and elsewhere.

3. Person 1 was a licensed chiropractor with an office located in Maryland. Person 1 occasionally provided physical therapy and chiropractic treatment to Turner.

4. WMATA was created by an interstate compact in 1967 to plan, develop, build, finance, and operate a balanced regional transportation system in the District of Columbia area.

WMATA operated and maintained metro train and bus services in and around the District of Columbia area.

5. American Family Life Assurance Company ("AFLAC") was an insurance company based in Georgia. AFLAC provided health care insurance services to WMATA and its employees, including for medical and disability insurance. AFLAC was a "health care benefit program" as defined in 18 U.S.C. § 24(b).

### *Disability Claim Process*

6. When filing an AFLAC disability claim, a policy holder submitted several forms, including, but not limited to, an "Initial Disability Claim Form" or a "Continuing Disability Claim Form." These forms were filled out with policy holder/patient information (e.g., name, DOB, address) and descriptive information about the disability (e.g., date of occurrence, how it occurred). Another necessary form was an "Initial Disability Claim Form – Physician's Statement." This form included similar policy holder/patient information and other specifics that were filled out by the patient's physician and/or the physician's office (e.g., diagnosis information, date/details about the injury, date the patient was first seen by the physician). At the bottom of this form was also a signature line to be completed by the patient's physician.

### Health Care Fraud Conspiracy

7. In or about July 2021, Turner was introduced to Co-conspirator 1 as someone who could help WMATA employees obtain additional money by submitting disability claims on their behalf.

8. Turner and Co-conspirator 1 agreed that Turner could obtain money by having Co-conspirator 1 submit a disability claim to AFLAC on Turner's behalf.

2

9. Turner and Co-conspirator 1 agreed that Co-conspirator 1 would receive a portion of the insurance payout if the disability claim was approved and funded.

10. Turner provided Co-conspirator 1 with the information needed to submit disability claims to AFLAC, including, but not limited to, Turner's name, date of birth, and address, the name and contact information of Person 1, copies of Turner's WMATA paystubs, and Turner's AFLAC insurance policy information.

11. On or about July 19, 2021, with Turner's permission, Co-conspirator 1 submitted a disability claim to AFLAC on Turner's behalf. Turner knew that he was not disabled and that the disability claim was fraudulent.

12. AFLAC assigned the claim with claim number 029736882.

13. Claim number 029736882 included an Initial Disability Claim Form stating that, on December 18, 2020, Turner fell off a step and hurt his lower back.

14. The Initial Disability Claim Form also included an "Employer's Statement" stating that Turner had not returned to work since the alleged injury, and indicating an expected return to work date of August 3, 2021. The Employer's Statement was allegedly signed by Turner, but was actually signed by Co-conspirator 1.

15. The Initial Disability Claim Form also included a "Physician's Statement" stating that Turner had been injured and become disabled as of December 18, 2020, that Turner was last treated on July 15, 2021, that Turner was not cleared to return to work, and that Turner's expected return to work date was August 3, 2021. The Physician's Statement was purportedly signed by Person 1.

16. Person 1 did not complete or sign the Physician's Statement. The Physician's statement was actually completed and signed by Co-conspirator 1.

17.     Claim number 029736882 also included several "Doctor Notes" claiming that Turner was under Person 1's care and was not cleared to work due to a back injury. Each Doctor Note was purportedly signed by Person 1.

18.     Person 1 did not provide or sign any of the Doctor Notes. The Doctor Notes were actually created and signed by Co-conspirator 1.

19.     The claim and its supporting documents were fraudulent insofar as none of the documents were completed or signed by Person 1, Turner was not injured on December 18, 2020, Turner continued to work for WMATA and collected his regular paychecks from December 18, 2020, to August 3, 2021, and Turner was not treated by Person 1 on the dates indicated.

20.     On or about July 26, 2021, AFLAC approved claim number 029736882 and paid $15,895 to Turner. Turner accepted this payment even though he knew that it was for a disability benefit to which he was not entitled.

21.     On or about July 27, 2021, Turner paid $1,400 of the claim proceeds to Co-conspirator 1, fulfilling his agreement to kick back a portion of the claim proceeds to Co-conspirator 1 in exchange for Co-conspirator 1's assistance in preparing and submitting the fraudulent disability claim.

22.     On or about January 18, 2022, with Turner's permission, Co-conspirator 1 submitted a second disability claim to AFLAC on Turner's behalf. Turner knew that he was not disabled and that the disability claim was fraudulent.

23.     AFLAC assigned the second claim with claim number 032761515.

24.     Like the first claim, the second claim included an Initial Disability Claim Form, Employer's Statement, Physician's Statement, and Doctor Notes, this time claiming that Turner

had been injured on September 8, 2021, while moving furniture, was under Person 1's care, and was not cleared to return to work until February 16, 2022.

25. The Physician's Statement and Doctor Notes were again purportedly completed and signed by Person 1. Person 1 did not complete or sign those documents. In reality, they were completed and signed by Co-conspirator 1.

26. The claim and its supporting documents were fraudulent insofar as none of the documents were completed or signed by Person 1, Turner was not injured on September 8, 2021, Turner continued to work for WMATA and collected his regular paychecks from September 8, 2021, to February 16, 2022, and Turner was not treated by Person 1 on the dates indicated.

27. On or about January 25, 2022, AFLAC approved claim number 032761515 and paid $14,178.33 to Turner. Turner accepted this payment even though he knew that it was for a disability benefit to which he was not entitled.

28. On or about January 27, 2022, Turner paid $2,500 of the claim proceeds to Co-conspirator 1, fulfilling his agreement to kick back a portion of the claim proceeds to Co-conspirator 1 in exchange for Co-conspirator 1's assistance in preparing and submitting the fraudulent disability claim.

29. On or about February 8, 2023, with Turner's permission, Co-conspirator 1 submitted a third disability claim to AFLAC on Turner's behalf. Turner knew that he was not disabled and that the disability claim was fraudulent.

30. AFLAC assigned the third claim with claim number 039627556.

31. Like the first and second claims, the third claim included an Initial Disability Claim Form, Employer's Statement, Physician's Statement, and Doctor Notes, this time claiming that

Turner had been injured on August 7, 2022, with no cause of the injury provided, was under Person 1's care, and had been cleared to return to work as of February 8, 2023.

32. The Physician's Statement and Doctor Notes were again purportedly completed and signed by Person 1. Person 1 did not complete or sign those documents. In reality, they were completed and signed by Co-conspirator 1.

33. The claim and its supporting documents were fraudulent insofar as none of the documents were completed or signed by Person 1, Turner was not injured on August 7, 2022, Turner continued to work for WMATA and collected his regular paychecks from August 7, 2022, to February 8, 2023, and Turner was not treated by Person 1 on the dates indicated.

34. On or about February 17, 2023, AFLAC approved claim number 039627556 and paid $15,600 to Turner. Turner accepted this payment even though he knew that it was for a disability benefit to which he was not entitled.

35. On or about February 22, 2023, Turner paid $2,400 of the claim proceeds to Co-conspirator 1, fulfilling his agreement to kick back a portion of the claim proceeds to Co-conspirator 1 in exchange for Co-conspirator 1's assistance in preparing and submitting the fraudulent disability claim.

        Respectfully Submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY

        _____
        BRIAN P. KELLY
        Assistant United States Attorney
        D.C. Bar No. 983689

DATED: August 6, 2024

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crimes charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

I have read every word of this Statement of the Offense. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

Date: 8/20/24

Brady Turner
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: 8/20/24

Rammy Barbari
Counsel for Defendant